FILED

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

99 MAY 18 PH 12: 27

U.S. DISTRICT COURT
N.D. OF ALABAMA

VALENCIA P. BELL; INEZ BOSWELL;           )
RUTH HANNON,                              )
                                          )
          Plaintiff,                      )
                                          )
v.                                        ) CIVIL ACTION NO. 97-PWG-1278-S
                                          )
LAWSON STATE COMMUNITY COLLEGE,           )
                                          )
          Defendant.                      )

**ENTERED**

**MAY 1 8 1999**

MEMORANDUM OF OPINION

Plaintiffs in this case are three female college instructors at Lawson State Community

College ("Lawson State") assigned to teach Adult Basic Education ("ABE") at William E. Donaldson

Correctional Facility ("Donaldson"). Plaintiffs have named as defendant, Lawson State, their

employer. The following legal theories are before this Court: (1) hostile work environment sexual

harassment under Title VII of the Civil Rights Act of 1964, as amended; (2) hostile work environment

sexual harassment under Title IX of the Education Amendments Act of 1972; (3) retaliation under

Title VII; (4) negligence under Alabama state law; and (5) negligent and wanton supervision under

Alabama state law.[1]

          Plaintiffs claim that defendant is liable for the hostile work environment created by

male inmates who have, among other things, masturbated and exposed their genitals in front of the

female instructors. Plaintiffs claim that Lawson State demonstrated deliberate indifference to the

complaints raised by them regarding inmate sexual misconduct. Plaintiffs also claim that Lawson

State retaliated against them for filing their charges of discrimination with the EEOC when they were

---

[1]     Other previously named defendants and a § 1983 claim have been dismissed on motion of plaintiffs.
        (Documents #32 and #40).

49

removed from their teaching positions and reassigned to a small conference room with no explanation for the action.

This matter is before the court on defendant's motion for summary judgment. The parties have consented to the magistrate judge's jurisdiction pursuant to 28 U.S.C. § 636(c)(1).

Summary judgment is appropriate only if there are no genuine issues of material fact and the movant is entitled to judgment as a matter of law. Rule 56, *Federal Rules of Civil Procedure*. In making that assessment, the court must view the evidence in a light most favorable to the non-moving party and must draw all reasonable inferences against the moving party. *Celotex Corp. v. Catrett*, 477 U.S. 317 (1986). The burden of proof is upon the moving party to establish his prima facie entitlement to summary judgment by showing the absence of genuine issues and that he is due to prevail as a matter of law. *See Clark v. Coats & Clark, Inc.*, 929 F.2d 604 (11th Cir. 1991). Once that initial burden has been carried, however, the non-moving party may not merely rest upon his pleading, but must come forward with evidence supporting each essential element of his claim. *See Celotex Corp. v. Catrett*, 477 U.S. 317 (1986); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242 (1986); *Barfield v. Brierton*, 883 F.2d 923 (11th Cir. 1989). Unless the plaintiffs, who carry the ultimate burden of proving their action, are able to show some evidence with respect to each element of the claims, all other issues of fact become immaterial and the moving party is entitled to judgment as a matter of law. *See Celotex Corp. v. Catrett*, 477 U.S. 317 (1986); *Bennett v. Parker*, 898 F.2d 1530 (11th Cir. 1990). As the Eleventh Circuit has explained:

> Facts in dispute cease to be "material" facts when the plaintiff fails to establish a prima facie case. "In such a situation, there can be 'no genuine issue as to any material fact,' since a complete failure of proof concerning an essential element of the non-moving

2

> party's case necessarily renders all other facts
> immaterial." [Citation omitted].  Thus, under such
> circumstances, the public official is entitled to
> judgment as a matter of law, because the plaintiff has
> failed to carry the burden of proof.  This rule facilitates
> the dismissal of factually unsupported claims prior to
> trial.

898 F.2d at 1532.

Undisputed Facts

Bell has been teaching inmates at Donaldson since 1988, Boswell since 1985, and

Hannon since 1986.  (Bell Deposition, p.19; Boswell Deposition, p.204; Hannon Deposition, p.32).

All of the plaintiffs remain employed with Lawson State and continue to teach inmates in the ABE

program at Donaldson.  Each plaintiff continues to earn salaries ranging from $46,000 per year to

$59,000 per year.  (Bell Deposition, pp.17-18; Boswell Deposition, p.223; Hannon Deposition, p.75).

### Valencia Bell

In the complaint, Bell alleges the following specific incidents of  sexual harassment

by Donaldson inmates:

> On or about February 26, 1996, she observed Inmate
> Robert Bates masturbating, with penis exposed, while
> seated at his desk in her class.  (First Amended
> Complaint, ¶ 30).
>
> On or about March 7, 1996, she overheard two
> unidentified inmates "boast[ing] loudly about 'fucking
> [co-plaintiff] Hannon.'" (First Amended Complaint, ¶
> 32).
>
> She observed Inmate Sammy Calloway "staring at her
> buttocks" with a "focus ... so fixed on her buttocks
> that it took him a few seconds to realize she had

3

discovered him." (First Amended Complaint, ¶ 32). Bell gives no date in the Complaint for this incident.

Sometime around 1994, Inmate Bobby Yancy once "mumbled in a low tone [to her], 'You big titty bitch.'" (First Amended Complaint, ¶ 34; Bell Deposition, p.58).

"The hallways are often crowded and as inmates pass [Bell's] door, she often overhears unidentified inmates make remarks such as, 'Hey Ms. Bell, I'm going to get those hips.'" (First Amended Complaint, ¶ 35).

In late 1995, "[A] known masturbator from Ms. Hannon's class [was] placed in Ms. Bell's class without her knowledge that he was a known masturbator. When Ms. Hannon pointed the inmate out to her, Ms. Bell objected to his presence in her class." (First Amended Complaint, ¶ 36; Bell Deposition, pp. 161-62). This "known masturbator," Inmate Deontini Sullivan, never masturbated or otherwise misbehaved in Ms. Bell's classroom. (Bell Deposition, p.162).

### Inez Boswell

Boswell alleges the following incidents of sexual harassment in the complaint:

In January 1996, an unidentified inmate "called out, 'Mrs. Boswell, I'm going to get that pussy one day.' The voice repeated, 'I'm going to get that pussy one day.'" (First Amended Complaint, ¶ 51).

"On any given day she often hears remarks like, 'Mrs. Boswell, I'm going to get that one day." (First Amended Complaint, ¶ 52). Boswell neither identifies the inmates alleged making these remarks nor gives a time frame within which the remarks are made.

"On or about February 22, 1996, [Inmate] Jeffery Walker ... became disruptive in her classroom and said

4

'Fuck this shit, I have 21 years to do.'" (First Amended Complaint, ¶ 53,57).

"On or about February 28, 1996 [Inmate] Shane Jordan ... approached Ms. Boswell outside her assigned class ... masturbating with his right hand. (First Amended Complaint, ¶ 54).

On or about March 11, 1996, upon returning from the men's restroom to Boswell's classroom, Inmate Larry Ferrell exposed his buttocks and penis to Boswell. (First Amended Complaint, ¶ 56).

In mid-April 1996, Boswell observed Inmate Eric Reed, another instructor's student, exposing his penis in the hallway outside her classroom. (First Amended Complaint, ¶ 58).

On or about May 2, 1996, "all inmates who were assigned to [ABE were ordered] to report to school. There were 48 inmates placed in her classroom.... They stated, 'bitch, your [sic] are the reason for this, you must be desperate to put us in here." (First Amended Complaint, ¶ 61). Inmate Adrian Gardner "looked Ms. Boswell in the eyes and said, "I should take both feet and put them on your desk and pay you for this." (First Amended Complaint, ¶ 62). An unidentified inmate called out, what I have for you Ms. Boswell is big, long and black." (*Id.*)

Almost daily, Ms. Boswell is subjected to language such as: 'fuck this shit,' 'cram this shit up your ass,' and 'this mother fucking shit ain't about nothing." (First Amended Complaint, ¶ 65). Bell neither identifies the inmates allegedly making these remarks nor does she give a time frame within which the remarks were made.

### Ruth Hannon

Hannon alleges the following incidents of sexual harassment in the complaint:

> On or about June 6, 1995, Officer James Freeman observed inmate/student Deontini Sullivan sitting at his desk masturbating." (First Amended Complaint, ¶ 76). Hannon was in the classroom at the time of Sullivan's public masturbation but never personally observed Sullivan masturbating. (Hannon Deposition, pp.110-11).

> On or about January 26, 1996, Inmate Steven Bennett stood in the doorway of her classroom and yelled into the room at one of her students. (First Amended Complaint, ¶ 79). Hannon approached Inmate Bennett and told him not to yell at students in her classroom. (*Id.*). "Inmate Bennett walked up to her and stared at her in a threatening manner until she summoned Officer James Freeman." (*Id.*).

> "On or about March 20, 1996, Ms. Hannon observed inmate Jimmy Sanders looking at her with his penis in his hand, masturbating." (First Amended Complaint, ¶ 81). Inmate Sanders was not assigned to the ABE area. (*Id*).

> On or about June 12, 1996, "a large number of inmate/students entered the ABE area from the east side and started chanting such phrases as: 'Hey, Ms. Hannon, Ms. Hannon, I wanna get under your dress!! Ms. Hannon, pull up your skirt! Ms. Boswell, get out here!" (First Amended Complaint, ¶ 89).

All of the plaintiffs filed charges of discrimination with the EEOC on or about June 7, 1996. (First Amended Complaint, ¶ ¶ 42, 68, 86). On or about July 12, 1996, the plaintiffs were temporarily reassigned to a conference room on Lawson State's main campus. (First Amended Complaint, ¶ ¶ 45, 71, 90).

I.    Whether a cause of action is recognized under Title IX
      for student against teacher sexual harassment.

Lawson State argues that it cannot be liable under Title IX for the sexual misconduct

of inmate students.  In support of this position, defendant cites *Davis v. Monroe County Board of*

*Education*, 120 F.3d 1390 (11th Cir. 1997), *cert. granted in part*, ___U. S. ___, 119 S.Ct. 29, 141

L.Ed.2d 789 (1998).  In *Davis*, the Court of Appeals for the Eleventh Circuit held that Title IX could

not be used to assert a sexual harassment claim where a student is the harasser of another student.

Neither party has cited a Title IX case involving the harassment of a teacher by the student.  Further,

the court has been unable to locate such a case.

The *Davis* court summarized the Title IX law thusly:

> The terms of Title IX gave educational institutions
> notice that they must prevent their employees from
> themselves engaging in intentional gender
> discrimination.  *See Franklin*, [v. *Gwinnett County*
> *Public Schools*], 503 U.S. [60,] 75 [(1992)].  Thus,
> school administrators cannot deny admission to female
> applicants because of their gender.  *See Cannon [v.*
> *University of Chicago*], 441 U.S. [677,] 709 [(1979)].
> School administrators cannot discriminate against
> teachers on account of sex.  *See North Haven Board*
> *of Education [v. Bell]*, 456 U.S. [512,] 530 [(1982)].
> Teachers cannot sexually harass their students.  *See*
> *Franklin*, 503 U.S. at 74-75, 112 S.Ct. at 1037.

120 F.3d at 1401.

Title IX was obviously intended to prevent discrimination in the education setting of persons in a

subordinate position by those in a superior position.

Subsequent to the *Davis* decision, the United States Supreme Court decided *Gebser*

*v. Lago Vista Independent School District*, 524 U.S. 274 (1998) in which the court held that a school

district could be held liable for a teacher's sexual harassment of a student if the appropriate official has actual notice of the discrimination and is deliberately indifferent. The *Gebser* holding was limited to harassment of a student by a teacher. Because the *Gebser* court rejected agency principles as a ground for teacher against student harassment Title IX liability, several post-*Gebser* opinions by district courts have extended Title IX liability to schools or school districts in the student against student harassment context where the school was aware of the harassment and was deliberately indifferent or took no action. *See Morlock v. West Central Education District,* ___ F. Supp.2d ___, 1999 W.L. 176929 (D. Minn. 1999); *Haines v. Metropolitan Government of Davidson Co., Tennessee,* 32 F. Supp.2d 991 (M.D. Tenn. 1998); *Doe v. Sabine Parish School Board,* 24 F. Supp.2d 655 (W.D. La. 1998); *Carroll K. v. Fayette Co. Bd. of Education,* 19 F. Supp.2d 618 (S.D. W.Va. 1998). Despite these opinions, the law of this Circuit is *Davis* which does not impose Title IX liability when a student is harassed by another student. Further, while some courts have held that administrators and teachers cannot discriminate against prospective students and enrolled students and some district courts have also held that schools may be liable under Title IX when students sexually harass other students, this court is unaware of authority for the proposition that a school may be held liable under Title IX for a student's harassment of a teacher.

This court may not extend the clear scope of Title IX liability to a school when the sexual discrimination emanates from those in subordinate positions, here the prison inmate students, to those persons in superior authority positions, that is the teachers. The court concludes that there is no Title IX cause of action for student against teacher harassment.

8

II.    Whether the Title IX hostile work environment claims
       are precluded by Title VII's enforcement scheme.

        In *Lakoski v. James*, 66 F.3d 751, 755 (5th Cir. 1995) *cert. denied,* 519 U.S. 947, *reh.*

*denied,* 519 U.S. 1035 (1996), the Fifth Circuit Court of Appeals held that Title VII preempts Title

IX claims for money damages based on employment discrimination. *See also, Gibson v. Hickman,*

2 F.Supp.2d 1481, 1483-84 (M.D. Ga. 1998) (same); *Burrell v. City University of New York,* 995

F. Supp. 398, 408-10 (S.D. N.Y. 1998)(Title IX remedies do not extend to university employees but

only to students).

        In so holding, the Fifth Circuit looked to the legislative histories of Title VII and Title

IX. The court concluded that, based on a review of the legislative histories, "the Title IX right to be

free from sex discrimination in employment is no different from the Title VII right," 66 F.3d at 756

and that "Congress chose two remedies for the same right, not two rights addressing the same

problem." 66 F.3d at 757.

        The court elaborated:

> Title VII provided *individuals* with administrative and
> judicial redress for employment discrimination, while
> Title IX empowered *federal agencies* that provided
> funds to educational institutions to terminate that
> funding upon the finding of employment
> discrimination. In other words, Congress intended to
> bolster the enforcement of the pre-existing Title VII
> prohibition of sex discrimination in federally funded
> educational institutions; Congress did not intend Title
> IX to create a mechanism by which individuals could
> circumvent the pre-existing Title VII remedies.
>
> Administrative regulations also suggest that Title IX's
> proscription of sex discrimination, when applied in the
> employment context, does not differ from Title VII's.
> Department of Justice regulations governing

9

> procedures for investigating charges of employment
> discrimination brought under Title IX provide that
> "[i]n any investigation, compliance review, hearing or
> other proceeding, agencies shall consider title VII case
> law and EEOC Guidelines, 29 CFR parts 1604
> through 1607, unless inapplicable, in determining
> whether a recipient of Federal financial assistance has
> engaged in an unlawful employment practice." 28
> C.F.R. § 42.604 (1994). The Equal Employment
> Opportunity Commission's regulations adopt an
> identical view of Title IX's scope. *See* 29 C.F.R. §
> 1691.4 (1994).

*Id.*

In the absence of Eleventh Circuit authority and after consideration of the persuasive reasoning in

*Lakoski*, the court concludes that plaintiffs' Title IX claims are preempted by Title VII.

III.    Whether plaintiffs have met the deliberate indifference
        standard of a Title IX claim as established in *Gebser*.

Even if the Title IX hostile environment sexual harassment claim was cognizable and

was not preempted by Title VII, plaintiffs have failed to show that defendant's response to the

plaintiffs' complaints amounted to deliberate indifference–or an official decision by the recipient not

to remedy the violation. *See Gebser, supra.*

10

In the First Amended Complaint plaintiffs allege:

> The conduct of the defendants as alleged hereinabove violates Title IX because plaintiffs were required to work in a hostile environment which was tainted by impermissible sex and gender discrimination, which included inmates who exposed their male genitalia in front of them.  Lawson State is liable for such misconduct by the inmates because it had notice of previous misconduct and failed to take remedial steps to prevent a reoccurrence of such unlawful behavior by Lawson State.

(First Amended Complaint, ¶ 107).

As evidence of defendant's actual notice and deliberate indifference, plaintiffs rely on

the following:

> In March of 1994, the entire correctional faculty pleaded with Dean Stanley Francis to meet with them to discuss, among other things, inmate sexual misconduct.   Dean Francis was the college's administrative official responsible for technical education.   Jonathan Eldridge, who was then chairperson over correctional education told Francis that some of the complaints involved inmates masturbating in female instructors' classrooms. Donald Sledge, who now serves as chairperson remembered that he became frustrated over Dean Francis' refusal to meet with the correctional faculty to discuss their problems.  Francis testified that "[h]e (Ward) did not want a meeting."  In Francis' words, "they decided what would and wouldn't be done." The decision was made, right up to the President of the college to ignore the plight of three female instructors located in a maximum security prison.

(See Plaintiffs' Response to Defendants' Motion for Summary Judgment, pp. 23-24 ).

The statement above is correct, however, plaintiffs did not acknowledge that while

the dean stated he did not  want to meet with the faculty as a group he was willing to meet with them

individually. (Plaintiffs' Exhibit 6, p.162). Eldridge testified that Dean Francis told him the following:

> He stated that if each one of them would submit a letter of request to meet with him in regards to what they wanted to meet with him about, he would arrange an appointment to meet with each of them individually.

(Exhibit 6, pp.157-158).

Eldridge met with the teacher group after the group's second request to meet with the dean and informed them of Dean Francis's instructions. (Plaintiffs' Exhibit 6, p.159). Plaintiffs have not alleged that they ever requested individual meetings with Dean Francis. Under these circumstances, the dean's refusal to meet with the teachers as a group rather than individually was <u>not</u> deliberate indifference.[2]

---

[2] The court has concluded that the dean's refusal was not deliberate indifference, it is therefore unnecessary to address whether the school had notice of the harassment. Nevertheless, the court would have some question concerning notice based on the facts before the court. While Eldridge told the dean in 1994 that some of the complaints involved inmate sexual misconduct in female instructors' classrooms, neither the First Amended Complaint nor Plaintiffs' Response to Defendant's Motion for Summary Judgment identifies any incidents occurring prior to the teachers' March requests for a group meeting with the Dean. Indeed, the only masturbation incident occurring in 1994 identified by plaintiffs occurred in plaintiff Hannon's classroom in November 1994. (Exhibit 3, pp. 167-68). Plaintiff Boswell testified that an inmate did not masturbate in her classroom until November 1995. (Exhibit 1, pp. 580-81). Plaintiff Bell testified that the first time that an inmate masturbated in her class was in 1996. (Exhibit 2, pp. 55-58). Plaintiff Bell testified that the sexual harassment began in 1994 and included the following conduct:

> A. Inmates calling out my name and saying, "Ms. Bell, I'm going to get those hips." A student in my classroom told me that I was a big titty bitch. Other inmates calling other female instructors bitch by name, "Ms. Boswell, you're a bitch." Inmates standing outside of my door calling students in my classroom – I can't recall the details of that.

(Plaintiffs' Exhibit 2, p. 58).

IV.     Whether the Eleventh Amendment bars plaintiffs' Title IX
        claim against defendant Lawson State.

Lawson State is an entity of the State of Alabama. *Harden v. Adams*, 760 F.2d 1158 (11th Cir. 1985). Absent abrogation or waiver, the Eleventh Amendment bars federal claims for damages against the states, including suits brought by a state's own citizens. *Puerto Rico Aqueduct & Sewer Authority v. Metcalf & Eddy, Inc.*, 506 U.S. 139 (1993). Although not faced with the abrogation issue, the United States Supreme Court in *Franklin v. Gwinnett County Public School*, 503 U.S. 60, 72 (1992) *in dicta* started with the premise that Congress abrogated the state's Eleventh Amendment immunity under Title IX.

In *Beasley v. Alabama State University*, 3 F. Supp.2d 1304 (M.D. Ala. 1998) Chief Judge Myron H. Thompson in a well reasoned opinion specifically held that Congress effectively abrogated the Eleventh Amendment immunity of the states in the Title IX context by virtue of the nature of Title IX which did not thrust abrogation on potentially unwilling states but, rather, allowed the voluntary waiver of such immunity by a state that voluntarily accepted federal funds for education under Title IX. *See also Doe v. University of Illinois*, 138 F.3d 653, 657-60 (7th Cir. 1998) *petition for certiorari filed*, 67 U.S.L.W. 3083 (July 13, 1998) (No. 98-126). ("Congress validly abrogated the states' Eleventh Amendment immunity from suit when it passed the Equalization Act expressly making states subject to suits to enforce Title IX.") The court concludes that the Eleventh Amendment does not bar plaintiffs' Title IX claims against defendant.

13

•

V.    Whether defendant is entitled to summary judgment on plaintiffs'
      claim of Title VII hostile work environment sexual harassment.

        The elements plaintiffs must prove to succeed on their sexually hostile work

environment claim are: (1) that they are members of a protected group; (2) that they were subject to

unwelcome sexual harassment; (3) that the harassment was based on sex; (4) that the harassment was

sufficiently severe or pervasive so as to alter the conditions of their employment and create an abusive

work environment; and (5) that some basis for employer liability has been established. *Meritor Sav.*

*Bank v.* Vinson, 477 U.S. 57 (1986).

        In *Allen v. Tyson Foods, Inc.*, 121 F.3d 642, 646-47 (11th Cir. 1997), the Court of

Appeals for the Eleventh Circuit concisely summarized the basics of Title VII law in the area of

hostile work environment sexual harassment:

> A plaintiff can establish a violation of Title VII by
> proving sexual discrimination has created a hostile or
> abusive work environment. *Meritor Sav. Bank v.
> Vinson*, 477 U.S. 57, 66 [ ] (1986). The United States
> Supreme Court has explained: "[w]hen the workplace
> is permeated with discriminatory intimidation, ridicule,
> and insult, that is sufficiently severe or pervasive to
> alter the conditions of the victim's employment and
> create an abusive working environment." *Harris v.
> Forklift Sys., Inc.*, 510 U.S. 17, 21 [ ] (1993) (*citing
> Vinson*, 477 U.S. at 65, 67 [ ]) (internal quotation
> marks omitted). Moreover, the Court noted that,
> "whether an environment is 'hostile' or 'abusive' can
> be determined only by looking at all the
> circumstances." *Harris*, 510 U.S. at 23 [ ]. An
> employer is directly liable for hostile environment
> sexual harassment if it knew, or reasonably should
> have known, of the harassment and failed to take
> prompt remedial actions. *Faragher v. City of Boca
> Raton*, 111 F.3d 1530, 1535, 1538 (11th Cir. 1997) (*en
> banc*); *Steele v. Offshore Shipbuilding, Inc.*, 867 F.2d

14

1311, 1316 (11th Cir. 1989); *Henson v. City of Dundee*, 682 F.2d 897, 905 (11th Cir. 1982).

In determining whether an environment is hostile, the court should consider factors such as "the frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance." *Harris*, 510 U.S. at 23.

"Conduct that is not severe or pervasive enough to create an objectively hostile or abusive work environment—an environment that a reasonable person would find hostile or abusive—is beyond Title VII's purview." *Harris*, 510 U.S. at 21.

In *Oncale v. Sundowner Offshore Services, Inc.*, 523 U.S. 75 (1998), the Supreme Court recognized that in considering the objective severity of the harassment, the court must consider all the circumstances, including the social context.

Defendant argues that Lawson State cannot be held liable for the actions of the inmates because they are not the agents of defendant. The court recognizes that under some circumstances employers could be liable for the actions of non-employees based on the employer's actual or constructive knowledge of harassing conduct and failure to take appropriate remedial actions. *See* 29 C.F.R. § 1604.11(e); *Ligenza v. Genesis Health Ventures of Massachusetts, Inc.*, 995 F. Supp. 226 (D. Mass. 1998); *Stanley v. Lawson Co.*, 993 F. Supp. 1084 (N.D. Ohio 1997); *Mart v. Dr. Pepper Co.*, 923 F. Supp. 1380 (D. Kansas 1996); *Hallberg v. Eat 'n Park*, 1996 W. L. 182212 (W.D. Pa. 1996); *Equal Employment Opportunity Commission v. Federal Express Corp.*, 1995 W.L. 569446 (W.D. Wash. 1995); *Powell v. Las Vegas Hilton Corp.*, 841 F. Supp. 1024 (D. Nevada 1992); *Magnuson v. Peak Technical Services, Inc.*, 808 F. Supp. 500 (E.D. Va. 1992).

15

Despite these cases which allow employer liability when the harasser is a non-employee, the few cases of which the court is aware that have addressed Title VII based on the harassing actions of prison inmates have uniformly failed to find Title VII liability in such an instance.

In *Hicks v. State of Alabama*, Case No. 97-482-MJ-C, (S.D. Ala. 1998) (Cassady, Magistrate Judge), *aff'd by unpublished opinion*, No. 98-6764 (11th Cir. 1999), the plaintiffs sued under Title VII alleging hostile work environment sexual harassment based the sexual misconduct (masturbation) of inmates toward female correctional officers. Plaintiffs sought to hold defendants liable based on defendants having assigned plaintiffs to locations where inmates could sexually harass the plaintiffs and on defendants' failure to make the inmates stop such harassment. The United States District Court for the Southern District of Alabama granted summary judgment in favor of the State of Alabama, Department of Corrections and Departments of Correction officials and employees because "plaintiffs have failed to present sufficient evidence that similarly situated male correctional officers were treated more favorably by the defendants than the plaintiffs, that the inmates acted as agents or servants of the defendants, or that the defendants in any [way] condoned or acquiesced in the offensive conduct of the inmates toward the plaintiffs." The Court of Appeals for the Eleventh Circuit affirmed the district court's decision on the same grounds set forth by the lower court.

Prior to *Hicks* in a similar action, *Cooks v. State of Alabama*, Civil Action 95-0630-S (S. D. Ala. 1996) (Steele, Magistrate Judge), the United States District Court for the Southern District of Alabama held that Title VII did not apply to the prison setting when prison inmates engage in "inappropriate sexual acting out" directed at female correctional officers. (Defendant's Exhibit 3, p.295). The court's reasoning was based on the unique relationship between prison administration and prisoners which "is unlike anything else in the world." (Defendant's Exhibit 3, p.296). The court

16

held that the prison administration-prisoner relationship is not legally defined "in a way that was

contemplated ... under Title VII as creating a class of individuals who can be harassed." (Defendant's

Exhibit 3, p.296).

In *Wright v. Department of Corrections*, 31 F. Supp.2d 1336 (M.D. Ala. 1998), the

United States District Court for the Middle District of Alabama, the plaintiff, a female correctional

officer, argued that defendants violated Title VII by failing to take disciplinary action against inmates

who violated Rule 38, the prison rule dealing with inmate exposure and/or masturbation.  The court

found that because plaintiff was able to submit evidence of only one instance where an inmate was

not disciplined for a Rule 38 violation, the plaintiff's claim was without merit.

In *Powell v. Morris*, 1999 W.L. 130240 (S.D. Ohio 1999), a former prison secretary

complained that she was subjected to a sexually hostile work environment, alleging, among other

things:

> First, Plaintiff claims she was attacked by an inmate
> who was later allowed to "roam her area at will;" this
> episode resulted in Plaintiff "suffering an emotional
> breakdown when happening upon [the inmate's]
> presence on a subsequent date."  Second, Plaintiff
> alleges that Defendants permitted two convicted sex
> offenders to work unguarded in the same area that she
> worked, that these men sexually harassed her, and
> Defendants took no action to end this harassment after
> she complained of it.     Third, Plaintiff claims
> Defendants falsely accused her of having an improper
> relationship with an inmate.  Fourth, Plaintiff asserts
> that in October of 1995 another convicted sex
> offender motioned as is if he would masturbate in her
> presence, and Defendants took no actions in response
> to this incident.  Plaintiff claims that all of these
> incidents, and Defendants' failure to redress to them,
> made her fearful for her safety.

With respect to the plaintiffs' claims regarding prisoner harassment, the court recognized:

> Courts have repeatedly declined to impose sexual
> harassment liability upon correctional institutions for
> the sexually offensive conduct of inmates, as long as
> the defendant institution took proper preventive and
> remedial steps with regard to inmate behavior.
> [citations omitted]. The propensity of courts to decline
> imposing liability for prisoner acts is based on solid
> logical and practical foundations: anyone who works
> at a prison, particularly in a position with frequent
> inmate contact, must expect some off-color
> interactions. Prison employees inherently assume the
> risk of some rude inmates. <u>It is absurd to expect that
> a prison can actually stop all obscene comments and
> conduct from its inmates–people who have been
> deemed unsuited to live in normal society.</u> The most
> we can expect and require prisons to do is to
> implement and enforce policies reasonably calculated
> to minimizer such harassment and protect the safety of
> its employees.   Here, Plaintiff has not rebutted
> Defendant ODR's evidence demonstrating that it
> maintained such policies with regard to inmate
> behavior.
>
> Further, even if a prison could be held liable for the
> lewd acts of its inmates, Plaintiff has not alleged
> incidents severe enough to sustain a claim for a hostile
> environment. The totality of Plaintiff's alleged facts,
> even if true, would not rise to the level of a sexually
> hostile work environment. Further, each of Plaintiff's
> factual allegations suffer some fatal defect.

(Emphasis added). The court also observed that "the presence of sex offenders is the baseline
working condition in a correctional facility" in holding that the mere proximity of sex offenders to
the secretary did not alter her working conditions as required by Title VII. The court further noted
prisoner lewdness should have been expected or at least contemplated as part and parcel of the prison

environment and, thus, an episode where an inmate started to take off his pants and motioned as if he would masturbate did not rise to the level of a pervasively hostile environment.

In *Maine v. Oklahoma Department of Corrections*, 1997 W.L. 602688 (10th Cir. 1997), a prison librarian alleged a Title VII sexually hostile environment claim. The court concluded that the rape of plaintiff by a prison inmate was an isolated incident which was "neither severe nor pervasive enough to create an objectively hostile work environment." The court further concluded that

> [T]he actions of those inmates who behaved in an overtly sexual manner in front of plaintiff and sent her the obscene letter cannot ... be attributed to defendants. *See Hirschfeld v. New Mexico Correctional Department*, 916 F.2d 572, 579-80 (10th Cir. 1990). The record demonstrates [prison] officials did discipline many of these inmates in response to plaintiff's complaints, including the inmate who wrote the threatening letter."

Although each of these inmate harasser Title VII cases are suits against Departments of Corrections rather than an independent contractor providing services to the correctional institution and involve prison employees rather than employees of the independent contractor, the court nevertheless is convinced that Lawson State cannot be held liable for a sexually hostile work environment based on the actions of prison inmates over whom they have little, if any, control. This is so particularly in light of the fact that in almost every instance either DOC and/or Lawson State removed the offending inmate from the class of the complaining plaintiff promptly after receiving a complaint.[3/] In at least one instance, that of Deontini Sullivan, a non-offending inmate was removed

---

[3/] The fact that DOC may have taken remedial actions rather than Lawson State is of no consequence because the actions were taken and were effective. Further, DOC prison guards at the scene were clearly in the best position to take prompt corrective action. Apparently, there was at least some action taken by Lawson State

from the classroom of plaintiff Bell based only on her complaint that Sullivan had masturbated in plaintiff Hannon's classroom.[4]

Plaintiffs were aware that they would be in frequent contact with inmates since plaintiffs were in the prison to teach ABE classes to inmates. Although plaintiffs seek to distance themselves from "prison security guards who accepted employment with the DOC knowing they would be subjected to inmate misconduct" (Plaintiffs' response, p.24), the teachers were not in a substantially different position from a prison secretary or a prison librarian from the standpoint of expectations concerning a prisoner's conduct toward them.

Many of the inmates incarcerated at Donaldson have been convicted of crimes involving sexual misconduct or sexual violence. Further, many inmates, some of whom may or may not have committed sexual offenses prior to their incarceration, will engage in sexual misconduct while incarcerated. While some of the behavior complained of in the amended complaint may be severe or pervasive enough to create an objectively hostile work environment in normal society, prison is not normal society and thus such behavior must be viewed in the context in which it is occurred.[5]

---

as they offending inmates were not reassigned to the complaining plaintiffs' classes. There were only two incidents involving alleged sexual misconduct in which an inmate was not permanently removed from the complaining teacher's class. Plaintiff Bell saw Edward Alexander "rubbing his genital area" but he did not expose himself. Plaintiff Bell wrote a report on the incident and gave it to the roving officer. (Plaintiffs' Exhibit 2, pp.176-78). Plaintiff Bell also caught Sammy Calloway staring at her buttocks. Calloway was removed from plaintiff Bell's classroom by Eldridge who spoke to him and dismissed him for the rest of the day. Calloway returned to class the next day but was never caught staring at plaintiff Bell's buttocks again. (Plaintiffs' Exhibit 2, p.75).

[4]     The court notes that inmate Sullivan was observed masturbating by an officer rather than plaintiff Hannon. (Hannon Deposition, pp.110-11).

[5]     Although defendants attempt to distinguish the verbal vulgarities directed to plaintiffs by prison inmates from the vulgar physical acts committed in the presence of plaintiffs by prison inmates, the court finds it

Plaintiffs argue that defendants did not take prompt remedial action because the dean failed to meet with the teachers as a group in March 1994 when the teachers requested a meeting. As previously noted, the meeting requests preceded any of the conduct complained of in the amended complaint. Further, the dean agreed to meet with the teachers individually; however, none of the teachers apparently requested such a meeting. Plaintiffs further allege that the Lawson State representative on the job board has access to the inmate files which contain disciplinary reports on past misconduct. This is specifically contradicted by the representative who stated that only the classification specialist on the job board had access to the inmate files. (Plaintiffs' Exhibit 6, pp. 83-86).[9]

Plaintiffs argue that the removal of the offending inmates was not sufficient, and that these inmates should never have been allowed to enroll in ABE classes, whether taught by plaintiffs or male teachers, and should not have been allowed in the ABE area. This overlooks the fact that not all of the offending inmates had records indicating sexual misconduct. (Defendant's Exhibit 2). Plaintiffs have identified only two offending inmates, Eric Reed and Robert Bates, as having histories of prior indecent exposure or exhibitionism violations. (Plaintiffs' Response, p.8). Further, such an approach is not reasonable because, presumably, Lawson State has no control over who is allowed

_____

unnecessary to determine specifically what words and acts may constitute sexual harassment based on the court's determination Lawson State is not liable for the actions of prison inmates and the court's further conclusion that prompt remedial action was taken, thus, precluding liability on the part of Lawson State.

[9]   Plaintiffs submitted as an exhibit the affidavit of James Freeman, a former correction's officer, who stated that "persons serving on the job board have access to inmate files which contain disciplinary reports regarding past conduct." (Plaintiffs' Exhibit 9). Freeman did not state the basis for his alleged knowledge. Defendant Lawson State requested that the entire affidavit of Freeman be stricken as well as portions of the affidavits of plaintiffs Boswell and Bell. The motion to strike is GRANTED with respect to the portions of Freeman's affidavit concerning the knowledge of persons on the job board and his conclusory statement that "many of the inmates assigned to ABE were 'known masturbators' by virtue of prior conduct." The remainder of the motion to strike is DENIED. (Document #39).

21

within various areas of the prison, including the ABE hallways.[2/]  As previously stated, in almost every instance complained of by plaintiffs, the offending inmates, if identified, were removed from the complaining teacher's classroom after engaging in misconduct and were reassigned where there was no further complaint of sexual misconduct.  The approach taken by defendant was both prompt and reasonable.

VI.      Whether plaintiffs have stated a *prima facie* case of retaliation under Title VII.

On June 7, 1996, plaintiffs filed charges of discrimination with the EEOC alleging hostile work environment sexual harassment against Lawson State and the DOC.  On July 10, 1996 the EEOC gave defendant notice of the charge of discrimination.  The notice is stamped "Received Jul 11, 1996 Office of the President."  (Defendant's Reply, Exhibit).  On July 12, 1996 Lawson State removed plaintiffs from Donaldson and reassigned them to a twelve seat conference room on Lawson State's main campus.  While assigned to the main campus, plaintiffs were assigned only one project–to prepare the ABE graduation program for August 9, 1996.  Although plaintiffs delivered their programs to the prison on August 9, 1996, Lawson State did not use plaintiffs' programs but, instead, used programs prepared by Sledge.

To establish a *prima facie* case of retaliation, plaintiffs must show: (1) they engaged in protected activity; (2) their employer was aware of that activity; (3) they suffered adverse employment action; and (4) there was a causal link between their protected activity and the adverse employment action.  *Maniccia v. Brown*, 171 F.3d 1364 (11th Cir. 1999); *Little v. United*

---

[2/]      If inmates do not sexually misbehave in male teachers' classes, it would be contrary to the rehabilitative goals of DOC to deprive an inmate of all access to ABE classes regardless of the sex of the teacher.

*Technologies*, 103 F.3d 956, 959 (11ᵗʰ Cir. 1997).  Clearly, by filing the EEO charges, plaintiffs engaged in protected activity.  Further, the president of Lawson State received notice of the EEO charges on July 11, 1996.  Plaintiffs complain that their reassignment to the conference room on the main campus was an adverse employment action.  In light of Lawson State receiving notice of the charge on July 11, 1996 and reassigned plaintiffs to the main campus on July 12, 1996 – one day later, the court concludes that it may be reasonably inferred that there was a causal link between the filing of the charges, the protected activity, and the adverse employment action.

The only issue before the court with respect to the retaliation claim is whether the reassignment which appears to have lasted approximately one month was an adverse employment action.[8]

In *Wideman v. Walmart Stores, Inc.*, 141 F.3d 1453, 1456 (11ᵗʰ Cir. 1998), the Court of Appeals for the Eleventh Circuit held that "Title VII's protection against retaliatory discrimination extends to adverse actions which fall short of ultimate employment decisions."  The court, however, stopped short of determining the threshold level that must be met to establish retaliatory discrimination.  The Court of Appeals for the Eleventh Circuit concluded that the actions in *Wideman* considered collectively were sufficient to establish retaliatory discrimination.  The actions complained of in *Wideman* were summarized thusly:

> First, on February 11, 1995, the day after she informed management that she had filed an EEOC charge, she was improperly listed as a no-show on a day she was scheduled to have off.  Wideman discovered the error when she went into the Wal-Mart to shop.  When she brought the error to the attention of her manager,

---

[8]     According to plaintiffs' Exhibit 30, plaintiffs were scheduled to attend training classes at Donaldson on August 12 and 14, 1996.

Mark Telfer, he required her to work anyway without a lunch break. Second, on February 13 and 22, 1995, Telfer gave Wideman written reprimands. After the second reprimand, she received a one-day suspension. In her previous eleven months of employment at Wal-Mart she had not received any reprimands. Third, around February 13, 1995, Telfer began soliciting employees at Wal-Mart for negative statements concerning Wideman. According to Wideman, Telfer did not seek statements from employees who would have given positive comments about her. Fourth, on April 3, 1995, Wideman reported to work and found she had not been scheduled to work. When she announced her intention to call Wal-Mart headquarters to find out why, Assistant Manager Rene Willemain threatened to shoot her in the head. Fifth, on May 3, 1995, while she was working at Wal-Mart, Wideman suffered an allergic reaction which required medical treatment. Although Wal-Mart Assistant Manager Audrey Nichols was aware that Wideman needed treatment, she was needlessly delayed authorizing that medical treatment.

141 F.3d at 1455.

In this case, plaintiffs complain only that for four weeks, they were transferred to the main campus where the three of them worked in a small conference room on graduation programs which were never used. Whatever threshold the Court of Appeals for the Eleventh Circuit may set in the future, the court is confident that the allegation of plaintiffs would not meet the threshold. It is unnecessary for the court to address whether defendant has offered legitimate reasons for the employment action as plaintiffs have not established a *prima facie* case of retaliatory discrimination and the burden has therefore not shifted to defendant to rebut the presumption of retaliation.[9]

---

[9]    In plaintiffs' response to the defendant's motion for summary judgment, plaintiffs also complain for the first time that the administration instructed the chair of the Faculty Staff In-Service Planning Committee to get someone other than Boswell to preside over the March 1998 in-service training seminar. Plaintiffs argue that this is also evidence of retaliatory discrimination. The allegation concerning Ms. Boswell not being allowed

VII.    State claims

         While this court has supplemental jurisdiction over plaintiffs' state claims pursuant to

28 U.S.C. § 1367(a), the court declines to exercise supplemental jurisdiction as the court is dismissing

the only claims over which it had original jurisdiction.  28 U.S.C. § 1367(c)(3).  *See Mergens v.*

*Dreyfoos*, 166 F.3d 1114, 1119 (11ᵗʰ Cir. 1999).  Because resolution of plaintiffs' state law claims

depends on determinations of state law, those claims are best resolved by the Alabama courts.  *See*

*Baggett v. First National Bank of Gainesville*, 117 F.3d 1342, 1353 (11ᵗʰ Cir. 1997).[10] *See Beck v.*

*Prupis*, 162 F.3d 1090 (11ᵗʰ Cir. 1998), *petition for certiorari filed* (March 15, 1999) (No. 98-1480).

         Further, the court notes that plaintiffs' state law claims will not be barred by the

statute of limitations in light of the tolling provision of 28 U.S.C. § 1367(d).

         Based on the foregoing defendant's motion for summary judgment is due to be

GRANTED with respect to plaintiffs' Title IX and Title VII hostile work environment claims and

plaintiffs' Title VII retaliation claim.  Plaintiffs' negligence and negligent and wanton supervision

claims are due to be DISMISSED without prejudice.

---

to preside over the in-service training seminar was not specifically mentioned in either the amended complaint or in Ms. Boswell's deposition when she was questioned concerning what action she considered to be retaliatory.  This incident should therefore not be considered by the court; nevertheless, even if it was considered, the court is satisfied that plaintiffs would still not have established a *prima facie* case of retaliatory discrimination.

[10]    The court is of the opinion, however, that the state law claims of negligence and negligent and wanton supervision would appear to be factually without merit based on the deposition testimony of Eldridge who specifically stated that only the classification specialist on the job board had access to the inmate files.

A separate judgment consistent with this memorandum opinion will be entered simultaneously herewith.

As to the foregoing it is SO ORDERED this the ___ day of May, 1999.

_____
PAUL W. GREENE
UNITED STATES MAGISTRATE JUDGE